UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| MYOUNG (EDDIE) CHOI, *et al.*,<br>   *Plaintiffs*,<br><br>v.<br><br>WIREBARLEY AMERICA, INC., *et al.*,<br>   *Defendants.* | |
| WIREBARLEY AMERICA, INC., *et al.*,<br>   *Counter Claimants*,<br><br>v.<br><br>MYOUNG (EDDIE) CHOI, *et al.*,<br>   *Counter Defendants.* | No. 1:25-cv-01000-MSN-IDD |
| WIREBARLEY AMERICA, INC., *et al.*,<br>   *Third-Party Plaintiffs*<br><br>v.<br><br>DONG HOON (MARCUS) SHIN,<br>   *Third-Party Defendant.* | |

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendants WireBarley America, Inc. ("WireBarley America") and John Joong-Won Yoo's motions to dismiss Plaintiffs' first amended complaint. ECF Nos. 63 & 64. Plaintiffs' amended complaint arises out of an employment dispute between Plaintiffs Myoung (Eddie) Choi and Chris D'Antuono and Defendants WireBarley America, its parent company WireBarley Corporation ("WireBarley Korea"), and the CEO of both entities, Defendant John Joong-Won Yoo. WireBarley America allegedly hired Plaintiffs and then failed

to pay them for roughly eleven months of work. After Plaintiffs resigned, they brought the instant suit in which they allege that Defendants violated the Fair Labor Standards Act ("FLSA"), 8 U.S.C. §§ 201 – 219, and the Virgina Wage Payment Act ("VWPA"), Va. Code Ann. § 40.1-29 and committed unjust enrichment and fraud in the inducement. For the reasons that follow, the Court will dismiss Plaintiffs' claims under the FLSA (Count IV) and their claim of fraud in the inducement (Count III). It will also dismiss Plaintiffs' claim of claim of unjust enrichment (Count II) as to Defendant Yoo and Plaintiffs' claim of liability against WireBarley Corporation. The Court will otherwise deny the motion and will permit Plaintiffs' claims under the VWPA (Count I) and their claim of unjust enrichment as to WireBarley America (Count II) to move forward.

## I.     FACTUAL BACKGROUND

Plaintiffs' amended complaint alleges the following. WireBarley Korea is a global payment platform that offers international money transfer services, cross-border payments, and multicurrency cards. ECF 47 ¶ 9 ("Compl."). It has several subsidiaries, including WireBarley America, a Virginia corporation wholly owned by WireBarley Korea. *Id.* ¶¶ 9, 10. The entities have a close relationship. Yoo is the CEO of both entities, all of WireBarley America's operational funds come from WireBarley Korea, WireBarley America only sells WireBarley Korea's services and products, and WireBarley Korea ultimately controls WireBarley America's strategic, operational, personnel, and financial decisions. *Id.* at ¶¶ 6, 10, 12-14. WireBarley America also sends all of its revenue back to WireBarley Korea. *Id.* at ¶ 15.

In 2020, Choi began providing marketing services to WireBarley America as an independent contractor. Compl. ¶ 16. In 2021, Choi was offered a formal role as Director of Marketing by an executive at WireBarley America. *Id.* at ¶ 19. Around the same time, WireBarley America approved D'Antuono to work as the corporation's General Manager. *Id.* at ¶ 20.

In May and June of 2022, respectively, Choi and D'Antuono entered into Employment Agreements with WireBarley. Compl. ¶ 21. Under the Employment Agreements, both Plaintiffs would receive $250,000 annually for their work. *Id.* at ¶¶ 22-23. Both Plaintiffs also completed employment paperwork, such as W-4 tax forms. *Id.* at ¶ 24.

Plaintiffs then began to work for WireBarley America. They developed and introduced a branding and marketing strategy for a WireBarley America service known as "Infuse." Compl. ¶ 26. This involved developing marketing and website materials, pitch decks, and operating budgets. *Id.* at ¶ 26. They also worked on fundraising efforts for WireBarley Korea's "Series C investment round." *Id.* at ¶ 30.

WireBarley America paid D'Antuono $20,833 for his first month of work. Compl. ¶ 46. But in July of 2022, it stopped compensating him. *Id.* Meanwhile, WireBarley America paid Choi his monthly independent contractor fee of $8,333 until July 2022. *Id.* at ¶ 48. But it did not pay him his full monthly wages under the Employment Agreement and, after July 2022, WireBarley America stopped paying Choi altogether. *Id.*

After going several months without pay, Choi met with Yoo on September 2, 2022, to discuss why he and D'Antuono had not been paid. Compl. ¶ 31. Yoo indicated that "all due compensation would be taken care of in a timely and fair manner." *Id.* at ¶ 32. Relying on these representations, Plaintiffs continued their work on the Infuse project. *Id.* at ¶ 33. In January 2023, when Plaintiffs still had not been paid, Choi went to meet again with Yoo. *Id.* at ¶ 36. WireBarley America communicated to the Plaintiffs that they "should continue their work." *Id.* at ¶ 38. And so they did, until May 31, 2023, when Plaintiffs resigned. *Id.* at ¶ 41.

On July 5, 2023, after quitting his work with WireBarley America, Choi attempted once again to discuss with Yoo the unpaid wages he believed that he and D'Antuono were owed. Compl.

3

¶ 42. Yoo told Choi that he needed to discuss the issue with WireBarley America's CMO.[1] *Id.* at ¶ 43. Yoo, however, had terminated WireBarley America's CMO a month earlier. *Id.* at ¶ 43. Following Choi and Yoo's July 2023 meeting, Plaintiffs did not receive any communication from WireBarley America and never received their agreed-upon wages. *Id.* at ¶¶ 45, 46, 48-49.

## II. PROCEDURAL HISTORY

On May 14, 2025, Plaintiffs filed suit against WireBarley America and Yoo in Fairfax Circuit Court. ECF 1-1. Their complaint brought four causes of action: violation of the VWPA against WireBarley America (Count I); unjust enrichment against WireBarley America and Yoo (Count II), fraud in the inducement against WireBarley America and Yoo (Count III), and violation of the FLSA against WireBarley America and Yoo (Count IV). *Id.*

Defendants WireBarley America and Yoo removed Plaintiffs' case to this Court. ECF 1. They then filed an answer along with a third-party complaint against two other former employees (Dong Hoon (Marcus) Shin and Ah Young (Agnes) Choi) and counterclaims against Choi and D'Antuono. ECF 2. The Court dismissed the third-party complaint against Agnes Choi but allowed Defendants/Counter-Claim Plaintiffs to amend their counter claims.[2] ECF 39.

After discovery began, Plaintiffs filed an amended complaint. ECF 47. The amended complaint added WireBarley Korea as a defendant and sought to hold WireBarley Korea liable for the actions of WireBarley America. *Id.* at 1, 15. It did not add any causes of action or facts about the underlying employment dispute. *See generally* ECF 47. Despite having already answered Plaintiffs' complaint, Defendants WireBarley America and Yoo now move to dismiss Plaintiffs' amended complaint. ECF Nos. 63 & 64.

---

[1] The Court understand "CMO" to mean "Chief Marketing Officer."

[2] It appears that Defendant Dong Hoon (Marcus) Shin was not timely served with the third-party complaint under Federal Rule of Civil Procedure 4(m). *See* ECF 17 (summons returned unexecuted as to Dong Hoon (Marcus) Shin).

4

### III. ANALYSIS

#### A. Untimely Motion to Dismiss and Waiver of Affirmative Defenses

As a threshold matter, Plaintiffs contend that Defendants' motion to dismiss is improper because Defendants have already answered their complaint. ECF 69 at 6-9. Plaintiffs acknowledge that a party may file a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) after a plaintiff amends his complaint. *Id.* at 6-7; *see also* Fed. R. Civ. P. 15(a)(3). But they argue that a motion to dismiss may only address new claims raised in an amended pleading. *Id.* Because Plaintiffs' amended complaint contains no new causes of action, they contend that Defendants waived their ability to move to now seek a dismissal of their claims. *Id.* at 8-9.

Federal Rule of Civil Procedure 12(b) provides that a motion making any Rule 12(b) defense "must be made before pleading if a responsive pleading is allowed." A motion to dismiss, however, is not a defendant's last opportunity to argue that a plaintiff has failed to state a claim. "Rule 12(h)(2) provides that the defense of failure to state a claim upon which relief can be granted as set forth in Rule 12(b)(6) may be raised 'by motion for judgment on the pleadings, or at the trial on the merits.'" *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999) (quoting Fed. R. Civ. P. 12(h)(2)). And courts may construe an untimely motion made Rule 12(b) as a motion for judgment on the pleadings under Rule 12(c). *Id.*; *see also, e.g.*, *Hardy v. Lewis Gale Med. Ctr., LLC*, 377 F. Supp. 3d 596, 605-606 (W.D. Va. 2019). The Court will, accordingly, construe Defendants' untimely motion to dismiss as a timely motion for judgment on the pleadings.

Plaintiffs, however, raise a second point. They argue that even if the Court considers Defendants' motion as a motion for judgment on the pleadings under Rule 12(c), Defendants have waived their arguments that Plaintiffs failed to state a claim and failed to timely assert several of

their causes of action because Defendants did not include those affirmative defenses in their original answer. ECF 69 at 9-11.

Under Federal Rule of Civil Procedure 8(c), a party must raise affirmative defenses in its response to a pleading. But failure to state a claim is a defense that, under Federal Rule of Civil Procedure 12(h)(2) may be raised "in any pleading allowed or ordered under Rule 7(a)," "by a motion under Rule 12(c)," or at trial. Defendants thus have not waived their argument that Plaintiffs failed to state a claim by neglecting to include that argument as an affirmative defense in their answer.

Moreover, even for affirmative defenses that fall under Rule 8(c), such as a statute of limitations defense, "[i]t is well established that waiver does not automatically follow from the failure of a defendant to raise an affirmative defense in the answer." *Armbruster Products, Inc. v. Wilson*, 35 F.3d 555 (Table), 1994 WL 489983 (4th Cir. 1994) (quoting *Wilkinson v. United States,* No. 91–1795, 1992 WL 188144, at *3 (4th Cir. Aug. 7, 1992)). "[A]bsent unfair surprise or prejudice to the plaintiff, a defendant's affirmative defense is not waived when it is first raised in a pre-trial dispositive motion." *Brinkley v. Harbour Recreation Club*, 180 F.3d 598, 612 (4th Cir. 1999), *overruled on other grounds by Desert Palace v. Costa*, 539 U.S. 90 (2003).

Although Defendants did not raise their statute of limitations defenses as affirmative defenses in their answer to Plaintiffs' complaint, the Court discerns no unfair prejudice or surprise in allowing Defendants to raise the arguments here. This case has not yet proceeded to summary judgment. Nor was Defendants' delay comparable to cases like *Peterson v. Air Line Pilots Association, International,* 759 F.2d 1161, 1164-66 (4th Cir. 1985), where a defendant waited until three years into litigation to raise the issue of timeliness. As a result, the Court concludes that

Defendants have not waived the defenses asserted in their motion and will consider Defendants' claims on the merits.

    **B.    Standard of Review**

Motions for judgment on the pleadings are assessed using the same standards as a motion to dismiss under Federal Rule of Civil Procedure 12(b). *Edwards*, 178 F.3d at 243. At the pleading stage, the Court "must accept the factual allegations of the complaint as true and must view the complaint in the light most favorable to the plaintiff." *GE Inv. Priv. Placement Partners II v. Parker*, 247 F.3d 543, 548 (4th Cir. 2001). Nevertheless, to survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). A court also "need not accept the [plaintiff's] legal conclusions drawn from the facts, nor need it accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (quoting *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 616 n.26 (4th Cir. 2009) (internal quotation marks omitted)). Lastly, a court may grant a Rule 12(b)(6) motion to dismiss and dismiss a claim as untimely "if the time bar is apparent on the face of the complaint." *Semenova v. Md. Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017) (quoting *Dean v. Pilgrim's Pride Corp.*, 395 F.3d 471, 474 (4th Cir. 2005)).

    **C.    FLSA**

Defendants first challenge Plaintiffs' claim that Defendants failed to pay them a minimum wage as required under the FLSA (Count IV). Defendants argue that Plaintiffs' amended complaint fails to state a minimum wage violation because (1) Plaintiffs' claims are untimely, (2) Plaintiffs have not alleged sufficient facts about their work hours, and (3) Plaintiffs' salary and managerial

7

titles demonstrate that they are exempt from FLSA protections. ECF 63 at 3-4; ECF 64 at 3-4. The Court concludes that the majority of Plaintiffs' FLSA allegations fall outside the statute of limitations and the remainder fail to state a claim for relief.

"Congress enacted the FLSA to eliminate both substandard wages and oppressive working hours." *Helix Energy Sols. Grp., Inc. v. Hewitt*, 598 U.S. 39, 44 (2023) (quoting *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 739, (1981) (internal quotation marks omitted). "The statute addresses the former concern by guaranteeing a minimum wage." *Id.*; *see also* 29 U.S.C. § 206. An employer violates the FLSA's minimum wage guarantee if an employee's "total weekly compensation divided by the number of hours worked yields an hourly rate below 'minimum wage.'" *Kuntze v. Josh Enters., Inc.*, 365 F. Supp. 3d 630, 649 (E.D. Va. 2019). "Therefore, to state a plausible claim for unpaid wages for regular time (as opposed to overtime) under the FLSA, [a] [p]aintiff must allege enough facts for the Court to infer that [his] weekly hourly wage rate fell below the federal minimum wage of $ 7.25 per hour." *Id.* at 649-50.

Employees seeking to bring an FLSA claim are typically subject to the statute's two-year limitations period. *See* 29 U.S.C. § 255(a). An employee, however, may extend the limitations period to three years if they are able to show that an employer's violation of the FLSA was willful. *Id.*; *see also Desmond v. PNGI Charles Town Gaming, LLC*, 630 F.3d 351, 358 (4th Cir. 2011) (nothing that employees bear the burden to allege willful violations of the FLSA).

To claim a willful violation of the FLSA—and thereby extend the statute of limitations to three years—a plaintiff must allege that an employer "either knew or showed reckless disregard for the matter of whether its conduct was prohibited" by the statute. *Calderon v. GEICO Gen. Ins. Co*, 809 F.3d 111, 130 (4th Cir. 2015) (*quoting Desmond*, 630 F.3d at 358). Reckless disregard requires "notice, actual or constructive . . . of the existence and general requirements of the FLSA."

*Rains v. E. Coast Towing & Storage, LLC*, 820 F. Supp. 2d 743, 750 (E.D. Va. 2011) (quoting *Chao v. Self Pride, Inc.*, 232 F. App'x. 280, 287 (4th Cir. 2007)).

Plaintiffs filed their complaint on May 14, 2025. ECF 1-1. Therefore, unless Plaintiffs have adequately alleged a willful violation of the FLSA, only allegations in their complaint that fall after May 14, 2023, are timely.

The Court concludes that Plaintiffs have not plausibly alleged a willful violation of the FLSA. Plaintiffs do not allege that Defendants were on notice of the FLSA's "general requirements." *Rains*, 820 F. Supp. 2d at 750. Nor do they plausibly allege that Defendants acted recklessly or deliberately in failing to learn that Plaintiffs could be covered employees under the FLSA and subject to the statute's minimum wage requirements. *See Chao*, 232 F. App'x at 287. Indeed, Plaintiffs do not allege that they spoke to Defendants about the minimum wage at all. Plaintiffs' only allegations are that Choi confronted Yoo about the fact that he and D'Antuono were working without pay. *See* Compl. ¶¶ 31, 36, 42. Such facts are insufficient to state a claim of a willful FLSA violation. *See Chao*, 232 F. App'x at 286-87 (concluding that plaintiff had not established a willful FLSA violation where a Department of Labor investigator informed Defendants that the company's break time policy violated the FLSA but did not explain which provisions of the FLSA the company had violated and Defendants had disagreed with the investigator's conclusion); *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 132 (1988) (explaining that the willfulness standard does not apply simply because an employer knows that the FLSA is "in the picture").

Plaintiffs' remaining allegations within the two-year limitations period do not state a claim for relief. Plaintiffs broadly allege that they "continued their work" until they resigned from WireBarley America on May 31, 2023. Compl. ¶¶ 39, 41. But the complaint contains no allegations

9

about Plaintiffs' work during the timely period between May 14, 2023, and May 31, 2023. The complaint also includes no allegations—such as that Plaintiffs always worked forty hours a week or worked full-time until their resignation—that could enable the Court to infer that Plaintiffs performed work during that period for which they were entitled to compensation. Without more, Plaintiffs have not plausibly stated that, between May 14, 2023, and May 31, 2023, their "weekly hourly wage rate fell below the federal minimum wage of $ 7.25 per hour." *Kuntze*, 365 F. Supp. 3d at 649-50. Accordingly, the Court will dismiss Plaintiffs' claims under the FLSA.

    D.    **VWPA**

Second, Defendants seek to dismiss Plaintiffs' claim that Defendants did not provide them with regular pay and unlawfully withheld wages in violation of the VWPA (Count I). ECF 63 at 6-7; ECF 64 at 6-7.

The VWPA requires that employers "establish regular pay periods and rates of pay for employees except executive personnel" and that employers "pay salaried employees at least once each month." Va. Code Ann. § 40.1-29(A). The Act also prohibits employers from "withhold[ing] any part of the wages or salaries of any employee except for payroll, wage or withholding taxes or in accordance with law, without the written and signed authorization of the employee."[3] Va. Code Ann. § 40.1-29(C).

Defendants argue that Plaintiffs' claims under the VWPA are conclusory because Plaintiffs did not attach their Employment Agreements to the amended complaint or allege the number of hours that they worked. ECF 63 at 6; ECF 64 at 6. But these arguments are beside the point. By alleging that Plaintiffs were not paid for almost a year, Plaintiffs have plausibly alleged both that

---

[3] In 2020, the statute was amended to include a private right of action. *See* 2020 Va. Acts chs. 868, 1038 (codified at Va. Code Ann. § 40.1–29(J)); *see also Campbell v. Groundworks Operations, LLC*, 908 S.E.2d 136, 140 (Va. App. 2024), *appeal granted* (May 6, 2025) ("Employees may now pursue a claim directly against their employers independent of the Commissioner's discretion, giving them the ability to 'defend themselves.'").

10

they were not paid at regular intervals and that they did not receive the wages or salary they were promised under their Employment Agreements. Compl. ¶¶ 46, 48-49, 59. Plaintiffs did not need to attach their Employment Agreements or state the number of hours they worked to make these allegations plausible.

As with Plaintiffs' FLSA claim, Defendants also argue that Plaintiffs' salaries and managerial titles exempt them from the VWPA's requirements. ECF 63 at 6; ECF 64 at 7. While the VWPA does not mandate regular pay intervals for "executive personnel," Va. Code Ann. § 40.1–29(A), Defendants have not endeavored to show that Plaintiffs were executives.[4] The Court thus concludes that—at this stage—Plaintiffs have stated a claim under the VWPA for violations of the statute's regular pay period and salary withholding requirements.

### E. Fraud in the Inducement

Third, Defendants argue that the Court should dismiss Plaintiffs' claim for fraud in the inducement (Count III) as barred by the statute of limitations.[5] ECF 63 at 5; ECF 64 at 5. Plaintiffs' amended complaint alleges that Defendants, by and through Yoo, knowingly made false representations to Plaintiffs that they would be paid under the Employment Agreements. Compl. ¶ 70. Plaintiffs claim that Defendants made these representations to induce Plaintiffs to work for WireBarley America. *Id.* They further claim that Plaintiffs reasonably relied on the promise of pay

---

[4] Virginia courts do not appear to have fleshed out the definition of executive personnel under the VWPA. Under the FLSA, executive personnel are also exempt from the statute's protections. 29 U.S.C. § 613(a)(1). While "[a]n employer may raise a plaintiff's status as an exempt employee as an affirmative defense," *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 846 (6th Cir. 2012), exemptions "are to be narrowly construed against the employers seeking to assert them," *Calderon*, 809 F.3d at 120 (internal quotation marks omitted). To show that an employee is a "bona fide executive," an employer must satisfy three fact-based tests. *Helix*, 598 U.S. at 44-45. And "neither the name given to [an employee's] position nor that given to the work that he does is controlling." *Sutherland v. SOSi Intern., Ltd.*, No. 1:07-cv-557 JCC/TCB, 2007 WL 2332412, at *2 (E.D. Va. Aug. 10, 2007).

[5] Defendants also contend that Plaintiffs have not stated their fraud claims with the particularity required under Federal Rule of Civil Procedure 9(b). ECF 63 at 5; ECF 64 at 5. Because the Court concludes that Plaintiffs' fraud claims are untimely, it need not reach Defendants' particularity argument.

11

and provided services for which they have not been compensated. *Id.* at ¶¶ 71-72. Defendants argue that these allegations are untimely under Virginia law, and should be dismissed.[6]

Virginia law sets forth a two-year statute of limitations for fraud claims. *Schmidt v. Household Fin. Corp., II*, 661 S.E.2d 834, 838 (Va. 2008). The statute of limitations begins to run "when such fraud is discovered or by the exercise of due diligence reasonably should have been discovered—that is, upon actual or inquiry notice, whichever comes first." *Mission Integrated Techs., LLC v. Clemente*, 158 F.4th 554, 568 (4th Cir. 2025) (cleaned up). "Inquiry notice is triggered by evidence of the possibility of fraud, not by complete exposure of the alleged scam." *Id.* (quoting *Zeng v. Wang*, 906 S.E.2d 668, 678 (2024)).

Plaintiffs contend that the issue of timeliness is too fact-intensive to reach on a motion to dismiss. ECF 69 at 19. They further argue that, even if the Court reaches the issue of timeliness, their fraud claim did not accrue until July 2023, when Choi met with Yoo for a final time to discuss the nonpayment of wages and, therefore, their claims are timely. *Id.* at 20.

While the statute of limitations in a fraud action involves questions of fact, the issue may be resolved on a threshold motion "if all the facts necessary for resolution of the motion appear on the face of the complaint or are otherwise indisputable." *McPike v. Zero-Gravity Holdings, Inc.*, 280 F. Supp. 3d 800, 807 (E.D. Va. 2017). Here, the facts of the amended complaint indicate that Plaintiffs' claims are untimely. Plaintiffs allege that they stopped being paid in June of 2022. Compl. ¶¶ 46, 48. As early as September 2022, Choi spoke with Yoo and raised the issue of nonpayment. *Id.* at ¶ 31. Despite this conversation, Plaintiffs continued not receiving pay and so, in January 2023, Choi spoke with Yoo a second time. *Id.* at ¶¶ 35, 36. This second conversation

---

[6] In Defendants' motions to dismiss, they reference Plaintiffs' complaint as being filed on September 14, 2025. ECF 63 at 5; ECF 64 at 5. As they acknowledge in their reply brief, however, Plaintiffs complaint was filed on May 14, 2025. *See* ECF 1-1; ECF 70 at 7.

fared no better; Plaintiffs continued receiving no pay until they resigned on May 31, 2023. *Id.* at ¶ 41. In sum, Plaintiffs worked almost a full year without pay, despite repeated promises by Defendants that they would receive compensation.

Given these facts, the Court concludes that Plaintiffs had inquiry notice of fraud long before May 14, 2023. Indeed, it is hard to believe that any reasonable person exercising due diligence could work for almost a year without pay before being on notice that the failure to pay constituted a fraud or mistake. *See Schmidt*, 661 S.E.2d at 839 (defining due diligence as "[s]uch a measure of prudence, activity, or assiduity, as is properly to be expected from, and ordinarily exercised by, a reasonable and prudent man under the particular circumstances" (internal quotation marks omitted)). Because the statute of limitations deficiency is apparent on the face of Plaintiffs' complaint, the Court will dismiss Plaintiffs' claim of fraud in the inducement as untimely.

### F.  Unjust Enrichment

Defendants argue that Plaintiffs' last cause of action—unjust enrichment (Count II)—should be dismissed as to Defendant Yoo for failure to state a claim.[7] ECF 64 at 5-6; ECF 70 at 6-7.

To state a claim for unjust enrichment, a plaintiff must allege that (1) he conferred a benefit on Defendant, (2) Defendant knew of the benefit and should reasonably have expected to repay Plaintiff, and (3) Defendant accepted or retained the benefit without paying for its value. *Schmidt*, 661 S.E.2d at 838. Plaintiffs allege in their amended complaint that they worked for WireBarley America without pay. But nowhere do they allege that they conferred a specific benefit on Defendant Yoo, outside of his role as WireBarley America's CEO. Because Plaintiffs have not

---

[7] Defendant WireBarley America originally moved to dismiss Plaintiffs' claim of unjust enrichment, contending that the claim was barred by Plaintiffs' alleged Employment Agreements. ECF 63 at 5-6. WireBarley America, however, withdrew that argument in Defendants' reply brief (ECF 70 at 6), after Plaintiffs clarified that they pleaded unjust enrichment only as an alternative form of relief (ECF 69 at 22-24).

13

alleged that they conferred a specific benefit on Defendant Yoo, they have not plausibly stated a claim of unjust enrichment against him.

G.  **Piercing the Corporate Veil**

Lastly, WireBarley America argues that Plaintiffs have not alleged sufficient facts to pierce its corporate veil and establish liability against WireBarley Korea.[8] ECF 63 at 7.

"[A] corporate entity is liable for the acts of a separate, related entity only under extraordinary circumstances, commonly referred to as 'piercing the corporate veil.'" *Vitol, S.A. v. Primerose Shipping Co. Ltd.*, 708 F.3d 527, 543 (4th Cir. 2013) (quoting *Arctic Ocean Int'l, Ltd. v. High Seas Shipping Ltd.*, 622 F. Supp. 2d 46, 53 (S.D.N.Y. 2009)). Under Virginia law, a court may pierce the corporate veil only upon showing that "(1) the corporation was the alter ego, alias, stooge, or dummy of the other entity; and (2) the corporation was a device or sham used to disguise wrongs, obscure fraud or conceal crime." *William v. AES Corp.*, 28 F. Supp. 3d 553, 562 (E.D. Va. 2014) (quoting *Informatics Applications Grp., Inc. v. Shkolnikov*, 836 F. Supp. 2d 400, 427 (E.D. Va. 2011)).

"Alter ego liability may attach where there is such unity between a corporation and an individual that the separateness of the corporation has ceased." *Id.* (internal quotation marks omitted). To assess whether one entity constitutes the alter ego of another, courts consider factors such as "intermingling of funds; overlap in ownership, officers, directors, and other personnel; common office space; the degrees of discretion shown by the allegedly dominated corporation;

---

[8] Plaintiff briefly argues that WireBarley America lacks standing to contest whether Plaintiffs may pierce its corporate veil. ECF 69 at 27. The Court disagrees. "Article III standing is a requirement that applies 'almost invariably' to plaintiffs." *United States v. Torrey*, 523 F. App'x. 467, 469 (9th Cir. 2013) (dismissing a plaintiff's claim that a defendant lacked standing to bring an affirmative defense). Here, WireBarley America is in a defensive posture and need not demonstrate Article III standing to raise an argument. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561, (1992) (explaining that "[t]he party invoking federal jurisdiction bears the burden of establishing" the elements of Article III standing).

and whether the dealings of the entities are at arm's length." *Vitol*, 708 F.3d at 544. While many of these questions are fact-based, courts will dismiss claims of alter-ego liability at the motion to dismiss stage where Plaintiffs' general allegations fail to state a plausible claim for relief. *See, e.g.*, *Williams*, 28 F. Supp. 3d at 563.

Here, Plaintiffs' amended complaint alleges that WireBarley America operates near total control over WireBarley Korea. They share the same directors and CEO. Compl. ¶¶ 10, 11. All of WireBarley America's funds come from WireBarley Korea and WireBarley America's revenue flows directly back to WireBarley Korea. *Id.* at ¶¶ 12, 15. WireBarley America exclusively sells WireBarley Korea's products and services and WireBarley Korea exerts ultimate control over WireBarley America's strategic, operational, personnel, and financial decisions. *Id.* at ¶¶ 13, 14. These allegations are sufficient to demonstrate that "the separateness" of WireBarley America is merely an illusion. *Williams*, 28 F. Supp. 3d at 562.

But where Plaintiffs fall short is in plausibly alleging the second part of the test: that WireBarley America is a "device or sham used to disguise wrongs, obscure fraud or conceal crime." *Williams*, 28 F. Supp. 3d at 562. Plaintiffs' amended complaint includes no plausible allegations that WireBarley Korea established WireBarley America to serve as a sham corporation to conceal wrongdoing. Plaintiffs state only that the entities "have abused their separate corporate entity forms in a manner that has defrauded and caused harm to plaintiffs." Compl. ¶ 53. Such a conclusory allegation does not contain the "'factual enhancement' necessary to cross 'the line between *possibility* and *plausibility*.'" *Vitol*, 708 F.3d at 543 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).

15

## IV. CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part Defendants' Motions to dismiss. The Court grants Defendant Yoo's motion to dismiss (ECF 64) as to Count II (unjust enrichment). It grants Defendant WireBarley's motion to dismiss (ECF 63) as to Plaintiffs' claim of liability against Defendant WireBarley Korea. It grants both Defendants' motions to dismiss (ECF Nos. 63 and 64) as to Count III (Fraud in the Inducement) and Count IV (FLSA). The Court denies Defendants' motions to dismiss as to the remainder of Plaintiffs' claims (violation of the VWPA (Count I), and unjust enrichment as to Defendant WireBarley America (Count II)).

**SO ORDERED.**

/s/
Michael S. Nachmanoff
United States District Judge

December 16, 2025
Alexandria, Virginia